965 F.2d 1065
 38 Cont.Cas.Fed. (CCH) P 76,411
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
FXC CORPORATION, Appellant,
v.
Donald B. RICE, Secretary of the Air Force, Appellee.
 No. 91-1434.
 United States Court of Appeals, Federal Circuit.
 April 29, 1992.
 
 Before RICH, Circuit Judge, SKELTON, Senior Circuit Judge, and MICHEL, Circuit Judge.
 DECISION
 RICH, Circuit Judge.
 
 
 1
 FXC Corporation (FXC) appeals from the April 12, 1991 decision of the Armed Services Board of Contract Appeals (ASBCA), No. 33904, sustaining the August 1986 decision of the United States Air Force (Air Force) to terminate for default FXC's contract to manufacture mechanical releases for parachutes. We affirm.
 
 DISCUSSION
 
 2
 This case arose from a disagreement over testing specifications. FXC was required under the contract to perform two types of testing of the releases: initial "acceptance" testing of all units, and thereafter, "qualification" testing of selected units which had already passed the acceptance tests. FXC does not challenge the acceptance testing requirement that at altitudes of 10,000 and 14,000 feet, the releases had to properly operate within ± 750 feet, nor does it dispute that its releases never passed these acceptance tests. Additionally, there is no disagreement that the original Air Force purchase description (PD-420) required that at the same altitudes, the tolerance for qualification testing was also ± 750 feet.
 
 
 3
 The dispositive issue in this case is whether, at the time of termination, the contract required ± 750 feet as the tolerance for qualification testing, consistent with PD-420, or whether the contract had been modified to require a less stringent ± 1000 feet tolerance. FXC contends that "Modification P00009," the last in a series of modifications to the contract, changed the requirements for performance by incorporating into the contract an FXC-generated qualification testing specification (DQTP 8504), dated August 1985, which included a ± feet tolerance. In other words, FXC contends that through Modification P00009, the ± 1000 foot tolerance for qualification testing became a formal part of the contract. Because it was not given a sufficient length of time in which to perform the contract in accordance with Modification P00009 prior to termination, FXC contends, the default termination was improper.
 
 
 4
 FXC's argument fails. The ASBCA found that, although the Air Force in August 1985 had approved DQTP 8504 containing the discrepant ± 1000 feet tolerance, FXC and the Air Force subsequently agreed in November 1985 that the ± 750 feet tolerance would be used for qualification testing. Contrary to FXC's contention, this finding is supported by substantial evidence. See 41 USC 609(b) (1988).[1] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). In making its findings, the ASBCA had before it FXC's March 6, 1986 letter stating that "[t]he only prior agreement was in regard to the tolerances to the altitude settings as stipulated in ... Para 4.4.5.1 of DQTP 8504, Rev D, Nov. 1985 [the Nov. 1985 version showing ± 750 feet tolerances]"; the testimony of the government contracting officer that the parties reached agreement to use a tolerance matching that of the acceptance testing procedure (± 750 feet); and the testimony of a government engineer that the parties agreed in November 1985 to change the discrepant tolerance of the August 1985 DQTP 8504 back to ± feet. We also note the ASBCA's finding that in 1982, FXC had submitted an initial qualification testing procedure containing a discrepant ± 1000 feet tolerance, and that the Air Force had required correction back to ± 750 feet.
 
 
 5
 In addition to the above evidence, we take judicial notice of the fact that it would be illogical for the Air Force to allow qualification testing tolerances of ± 1000 feet, when the deliverable items the Air Force was purchasing had to meet a tighter ± 750 feet tolerance. This suggests that the Air Force did not intend to change the qualification testing tolerance to ± 1000 feet, and supports the ASBCA's determination that the Air Force's August 1985 approval of DQTP 8504 containing the ± 1000 feet tolerance was through oversight.
 
 
 6
 The bottom line is that FXC tried for five years to meet the contract requirements, but failed to do so. FXC does not deny that its releases never passed even the acceptance tests, which must be completed prior to qualification testing. Moreover, even assuming arguendo that the contract at the time of termination specified a ± 1000 feet tolerance for qualification testing, there is, in fact, no evidence that FXC's releases met even this less stringent test. Having thoroughly reviewed the record, we see no reversible error in the ASBCA's decision sustaining the default termination.
 
 
 
 [1]
 41 USC 609(b) (1988) provides in pertinent part:
 [T]he decision [of the agency board] on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.